FILED

2016 Jan-27  PM 02:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM R. BUSH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:15-cv-00769-JEO** |
| | ) | |
| **J.P. MORGAN CHASE** | ) | |
| **BANK, N.A., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

In this action, plaintiff William R. Bush has alleged a variety of federal and state law claims against defendants J.P. Morgan Chase Bank, N.A. ("Chase") and U.S. Bank National Association as Trustee for ABN AMRO Mortgage Corporation, Mortgage Pass-Through Certificates, Series 2003-4 ("U.S. Bank") (collectively, the "Defendants"). (Doc. 12). The claims are based on allegations that the Defendants falsely reported that Bush was in default on a mortgage loan and wrongfully initiated foreclosure proceedings on his property. The Defendants have moved to dismiss all of the claims except for Bush's claim for breach of contract. (Doc. 15). For the reasons discussed below, the Defendants' motion is due to be granted in part and denied in part.

# I. PROCEDURAL HISTORY

Bush filed this action in the Circuit Court of Jefferson County, Alabama, asserting fourteen separate claims against the Defendants: negligence, wantonness, unjust enrichment, wrongful foreclosure, slander of title, breach of contract, fraud, false light, defamation/libel/slander, violation of the Truth in Lending Act, violation of the Real Estate Settlement Procedures Act, violation of the Fair Credit Reporting Act, violation of the Fair Debt Collection Practices Act, and a claim for declaratory relief.   (Doc. 1-1).  The Defendants removed the action to this court and then moved to dismiss all of the claims except for the breach of contract claim. (Doc. 7).  Bush filed a motion for an extension of time to respond to the motion to dismiss, representing in the motion that he "intend[ed] to file an amended complaint [that would] address most, if not all, of the issues raised in the motion to dismiss and render the motion moot."   (Doc. 10).   The court granted Bush's motion, which was unopposed.

Bush then filed an amended complaint.  (Doc. 12).  His amended complaint contains a more detailed set of factual allegations than his original complaint, but otherwise the differences between the two complaints are minimal.  In particular, the amended complaint contains the same fourteen claims as the original complaint.  As before, the Defendants have moved to dismiss all of the claims in

the amended complaint except for the breach of contract claim.[1]  (Doc. 15).   The motion has been fully briefed and is now ripe for decision.

## II.  STANDARD OF REVIEW

The Defendants have moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes the dismissal of all or some of the claims in a complaint if the allegations fail to state a claim upon which relief can be granted.  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences.  *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Nor is it proper to assume

---

[1] In light of the filing of the amended complaint, the court denied the Defendants' initial motion to dismiss as moot.

that the plaintiff can prove facts he has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

The Defendants have also moved for a dismissal of Bush's fraud claim pursuant to Rule 9(b). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). The "particularity" requirement "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against

spurious charges of immoral and fraudulent behavior.' " *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted).

## III.  FACTUAL ALLEGATIONS

Bush alleges that he received a loan from ABN AMRO Mortgage Group, Inc. on November 15, 2002, to purchase the property located at 2013 Country Ridge Place in Birmingham, Alabama.  (Doc. 12 at ¶5).  The loan was evidenced by a promissory note and secured by a mortgage on the property.[2]  (*Id.*)  The note and mortgage were subsequently assigned to U.S. Bank, and Chase became the servicer of the loan.  (*Id.* at ¶ 2).  Bush alleges that the assignment of the note and mortgage to U.S. Bank was defective, but provides no factual basis for his allegation and did not attach a copy of the allegedly defective assignment to the amended complaint.  (*Id.* at ¶ 11).

In March 2013 the Defendants initiated foreclosure proceedings on Bush's property and scheduled a foreclosure sale for May 7, 2013.  According to Bush, he was not in default on his loan at that time.  He sent a letter disputing the debt to the foreclosing attorney and a qualified written request ("QWR") to both the

---

[2] Bush did not attach copies of the note and mortgage to his amended complaint (or to his original complaint), but copies were attached as exhibits to the defendants' notice of removal. (Doc. 1-1 at 35-47).  Because the note and mortgage are referenced in the amended complaint, the court may consider the documents in ruling on the defendants' motion to dismiss.  *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("In analyzing the sufficiency of the complaint, we limit our consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.").

foreclosing attorney and Chase.[3]  The foreclosure sale was postponed as a result. (*Id.* at ¶ 7).

The Defendants scheduled several other foreclosure sales in 2013, all of which were either cancelled or postponed.  After a period of inactivity, the Defendants resumed foreclosure proceedings in October 2014.  Bush sent another QWR to Chase, but Chase never responded to the QWR.  Another foreclosure sale was set for March 31, 2015.  Bush alleges that the sale was cancelled due to the filing of this action.  (*Id.*)

Bush alleges that each time a foreclosure sale was scheduled, the Defendants published notice of the sale in The Alabama Messenger and included false information regarding his alleged default on his mortgage loan.  (*Id.* at ¶ 10).  He further alleges that the false information regarding his alleged default was published on the internet and reported to the national credit bureaus, which damaged his reputation and his credit.  (*Id.*)  He asserts that he was not in default on his mortgage payments and that the attempted foreclosure proceedings were wrongful.  (*Id.* at ¶ 12).

---

[3] A "qualified written request" is written correspondence to the servicer of a federally related mortgage loan that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).

# IV.  ANALYSIS

## A.    Bush's Federal Claims

In his amended complaint, Bush alleges that Chase violated four federal statutes: the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* (Count Ten); the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* (Count Eleven); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* (Count Twelve); and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* (Count Thirteen).  His federal claims are asserted only against Chase and not against Bank One.  The Defendants have moved to dismiss all four claims.

### 1.    TILA

TILA is a remedial consumer protection statute designed to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a); *see Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 412 (1998).  TILA requires creditors to provide consumers with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."  *Id.* at 412.  Under TILA, a consumer has a private right of action against "any creditor who

fails to comply with any requirement imposed under this part ….."  15 U.S.C. § 1604(a).

In Count Ten, Bush alleges that Chase committed "multiple violations" of TILA and Regulation Z.[4]  (Doc. 12 at ¶ 81).  He alleges that Chase failed to provide required disclosures "prior to consummation" of his loan transaction, failed to make required disclosures "conspicuously and in writing," and failed to advise him of certain charges "incident to the extension of credit," including attorney fees and late charges. (*Id.* at ¶ 84).  He also alleges that Chase "understated the disclosed annual percentage rate."  (*Id.* at ¶ 87).

By its plain language, TILA's private right of action applies only to actions against "creditors."  15 U.S.C. § 1604(a).  TILA defines the term "creditor" as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g).  "The definition given in this sentence is restrictive and precise, referring *only* to a person who satisfies *both* requirements." *Cetto v.*

---

[4] Regulation Z, 12 C.F.R. §§ 226.1 *et seq.*, consists of various rules promulgated by the Federal Reserve Board to further the purposes of TILA.  *Hendley v. Cameron-Brown Co.*, 840 F.2d 831, 833 (11th Cir. 2000).

*LaSalle Bank Nat'l Ass'n,* 518 F.3d 263, 270 (4th Cir. 2008) (emphasis in original); *see also Parker v. Potter*, 232 F. App'x 861, 864 (11th Cir. 2007) (noting that a person must satisfy both prongs of the definition in order to be considered a creditor under TILA).

In its motion to dismiss, Chase argues that, even assuming that it satisfies the first prong of the statutory definition of "creditor," it does not satisfy the second prong and therefore is not a creditor for purposes of Bush's TILA claim. The court agrees.  The court notes that Bush has alleged in conclusory fashion that Chase "regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom [the debt arising from] the transaction which is the subject of this action is initially payable."  (Doc. 12 at ¶ 83).  However, this allegation is nothing more than a condensed recital of the two prongs of the statutory definition and is not entitled to a presumption of truth for purposes of a Rule 12(b)(6) motion to dismiss.  *See Franklin v. Curry,* 738 F.3d 1246, 1248 n. 1 (11th Cir. 2013).   Moreover, Bush's factual allegations demonstrate that Chase is not, in fact, the person to whom the debt arising from his loan transaction was initially payable.  According to his amended complaint, he received his loan from ABN AMRO Mortgage Group and, as part of the transaction, executed a note and mortgage with that entity.  (Doc. 12 at ¶ 5).

Consistent with these allegations, his note and mortgage both identify ABN AMRO Mortgage Group as the "Lender." (Doc. 1-1 at 36, 40). Simply put, there are no factual allegations from which the court could infer that Bush's mortgage debt was "initially payable" to Chase. Accordingly, Chase is not a "creditor" for purposes of liability under TILA and Bush's TILA claim is due to be dismissed.[5]

## 2. RESPA

In Count Eleven, Bush alleges that Chase violated RESPA by "failing to acknowledge or properly respond to [his] Qualified Written Requests (QWR)." (Doc. 12 at ¶ 91). RESPA establishes certain actions that must be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquiries. *See* 12 U.S.C. § 2605. As previously noted, a QWR is written correspondence to the servicer that "(i) includes, or

---

[5] Bush's response to the Defendants' TILA arguments is off point and smacks of unedited "cutting and pasting" from another brief. He asserts: "[The] argument propounded by Chase is that the 'quirky language' of § 1640 particularly defines 'creditor' in such an exclusive fashion that if forecloses assessment of statutory damages against a 'Servicer.' They completely rely for authority upon the decision in *Selman v. CitiMortgage, Inc.*, 2013 U.S. LEXIS 37017 (S.D. Mar. 5, 2013)." (Doc. 23 at 34-35). Not only is this a mischaracterization of the Defendants' argument, the Defendants do not rely on or even cite the *Selman* decision as support for their argument. Bush then devotes more than four pages of his response to arguing that the court should adopt the reasoning espoused in *Runkle v. Fed. Nat'l Mortgage Ass'n*, 905 F. Supp. 2d 1326 (S.D. Fla. 2012), a case that addresses "whether an *assignee* [of a loan] is liable for its servicer's conduct." *Runkle*, 905 F. Supp. 2d at 1332 (emphasis in original). As Bush does not allege that Chase is an assignee of his mortgage loan and is not seeking to hold Chase liable as an assignee, *Runkle* has no application here. Finally, Bush concludes his argument with this non sequitur: "In the [p]resent case, Bush has alleged Chase violated TILA. Accordingly, he has met the elements of the complaint [sic] and the motion to dismiss is due to be denied." (Doc. 23 at 43). The mere fact that he has accused Chase of violating TILA in no way establishes that he has adequately pleaded such a claim, which he has not.

otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Upon receipt of a QWR, a servicer must provide a "written response acknowledging receipt of the correspondence" within five business days and must take action on the QWR within thirty days. 12 U.S.C. §§ 2605(e)(1)(A) and 2605(e)(2).

The Defendants argue that Bush's RESPA claim should be dismissed because he has not pleaded sufficient facts to establish either that his QWRs met the requirements of § 2605(e)(1)(B) or that he suffered any actual damages caused by the alleged RESPA violations. Although it is a close question, the court is satisfied that Bush has adequately pleaded his RESPA claim and that the claim should not be dismissed at this time. The court readily acknowledges, as the Defendants point out in their motion, that the allegations in Bush's RESPA claim are confusing and perhaps even contradictory.[6] Nonetheless, Bush does allege that

---

[6] The court also acknowledges that Bush's opposition to the Defendants' motion to dismiss fails to address the Defendants' RESPA argument as such. Instead of responding to the Defendants' argument that his RESPA claim against Chase should be dismissed, Bush argues that U.S. Bank can be held vicariously liable for its "servicer's" RESPA violation, a curious argument given that his RESPA claim is not asserted against U.S. Bank. (The court notes that the RESPA claim in Bush's original complaint was asserted against "Defendants" (doc. 1-1 at ¶¶ 91-92), while the RESPA claim in his amended complaint is asserted only against Chase.) Even though his argument misses the mark completely, it is clear that he has not abandoned his RESPA claim.

he sent QWRs to Chase on April 29, 2013 and October 19, 2014; that Chase never responded to the QWRs; and that he was damaged by Chase's failure to provide him with the requested information about his loan because, without the requested information, he was unable to stop the foreclosure proceedings on his own and had to retain and pay an attorney to stop the foreclosure.  (Doc. 12 at ¶ 92).  The court is satisfied that these allegations are sufficient to state a claim for violation of RESPA that is at least plausible on its face and provides Chase with fair notice of the basis of the claim.  Accordingly, the Defendants' motion to dismiss Bush's RESPA claim will be denied.

### 3.    FCRA

In Count Twelve, Bush seeks to hold Chase liable under the FCRA for allegedly reporting inaccurate information regarding his mortgage loan to the national credit bureaus and failing to properly investigate his disputes. "[T]he FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *Chipka v. Bank of Am.,* 355 F. App'x 380, 382 (11th Cir. 2009).   It is apparent from Bush's allegations that he is seeking to hold Chase liable as a "furnisher" of information, and in his opposition to the Defendants' motion to dismiss he confirms as much.  (Doc. 23 at 43).

"The FCRA imposes two separate duties on furnishers. First, [15 U.S.C.] § 1681s–2(a) requires furnishers to submit accurate information to [credit reporting agencies]. Second, § 1681s–2(b) requires furnishers to investigate and respond promptly to notices of [consumer] disputes." *Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008). However, the FCRA does not provide a private right of action to redress violations of § 1681s-2(a). *Id.*; *see also Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009) ("[T]he statute explicitly bars private suits for violations of [§ 1681s-2(a)]."). The FCRA does provide a private right of action for violations of § 1681s-2(b), "but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency." *Peart*, 345 F. App'x at 386; *Green*, 288 F. App'x at 642.

In his opposition to the Defendants' motion to dismiss, Bush correctly asserts that "Chase must perform a reasonable investigation of a consumer dispute *after receiving notice from a credit bureau, such as Equifax, Experian or Trans Union.*" (Doc. 23 at 43 (emphasis added)). Nowhere in his amended complaint, however, has Bush pleaded any facts to suggest that Chase received notice of his dispute from a credit agency. Bush alleges that *he* informed Chase and the national credit bureaus that he disputed Chase's alleged inaccurate reporting (doc. 12 at ¶ 94), but he does not allege or offer any facts to suggest that *the credit bureaus* then notified Chase about the dispute. Therefore, he has failed to plead an essential

element of his FCRA claim and the claim is due to be dismissed.  *See Rice*, 2014 WL 3889472, at *6 (dismissing the plaintiff's FCRA claim where the plaintiff failed to plead any facts to suggest that the credit bureaus contacted the furnisher regarding the dispute).

### 4.    FDCPA

Bush's final federal claim against Chase is for violation of the FDCPA. Bush alleges that Chase committed numerous FDCPA violations, including: attempting to collect amounts not owed under his mortgage contract; seeking unjustified amounts; threatening legal action that was not permitted or not actually contemplated; revealing or discussing the nature of his debt with third parties; failing to identify itself as a debt collector in its communications; and falsely stating the amount of his debt.  (Doc. 12 at ¶ 107).  The Defendants argue that Bush's "conclusory" allegations do not satisfy the pleading requirements of Rule 8(a), and specifically argue that Bush has alleged no facts demonstrating that Chase is a "debt collector" for purposes of the FDCPA.

To state a claim under the FDCPA, a plaintiff must establish, among other things, that the defendant is a "debt collector."  *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1216 (11th Cir. 2012).  The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Expressly excluded from this definition are persons "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … concerns a debt which was not in default at the time it was obtained by such persons." 15 U.S.C. § 1692a(6)(F).  Furthermore, the FDCPA's legislative history suggests that a mortgagee and its assignee, including mortgage servicing companies, are not debt collectors under the FDCPA when the debt was not in default at the time it was assigned. *See Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95–382, at 3 (1977), 1977 U.S.C.C.A.N. 1695, 1698).

In paragraph 1 of his amended complaint, Bush alleges that Chase is a "debt collector" for purposes of the FDCPA, but offers nothing in the way of factual support for his allegation.  (Doc. 12 at ¶ 1).  Merely labeling Chase a "debt collector" does not satisfy the requirements of Rule 8.  In paragraph 106 Bush makes the further allegation that Chase is subject to the FDCPA "because as previously stated, it began servicing this loan while [he] was in default or past due with his payments."  (Doc. 12 at ¶ 106).  The court first notes that Bush did not "previously state" anywhere in his amended complaint that Chase began servicing his loan when he was in default.  To the contrary, Bush repeatedly asserts

15

throughout the amended complaint that he was *not* in default and was *not* behind in his mortgage payments.  (*See* Doc. 12 at ¶¶ 7, 9, 12, 53).  Apart from this glaring contradiction, Bush provides no factual allegations to support the conclusion that Chase began servicing his loan when it was in default, such as the date (or even the year) Chase became the loan servicer and the date (or even the year) the loan went into default.  In sum, Bush has failed to allege sufficient facts showing that Chase is a debt collector within the meaning of the FDCPA, and his claim for violation of the FDCPA is due to be dismissed.  *See Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1249 (N.D. Ala. 2013) ("Because the Complaint fails to allege facts showing the BANA is a debt collector within the meaning of the FDCPA, Plaintiffs' claim for violation of the FDCPA is subject to dismissal.").

## B.    Bush's State Law Claims

In his amended complaint, Bush has also asserted state law tort claims based on negligence (Count One), wantonness (Count Two), wrongful foreclosure (Count Four), slander of title (Count Five), fraud (Count Seven), false light (Count Eight), and defamation/libel/slander (Count Nine), along with state law claims for unjust enrichment (Count Three) and breach of contract (Count Six) and a claim for declaratory relief (Count Fourteen).  The negligence, wantonness, fraud, and unjust enrichment claims are asserted against Chase, while the wrongful foreclosure claim is asserted against U.S. Bank.  The other state law claims are asserted against both

Defendants.  The Defendants have moved to dismiss all of the state law claims except for the breach of contract claim.

### 1.    Unjust Enrichment, False Light, Defamation/Libel/Slander, and Declaratory Relief

The court first notes that Bush has offered no opposition or other response to the Defendants' arguments that his claims for unjust enrichment, false light, defamation/libel/slander, and declaratory relief fail as a matter of law and are due to be dismissed.  Consequently, he has effectively abandoned those claims and they are all subject to dismissal.  *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *see also McMaster v. United States,* 177 F.3d 936, 940–41 (11th Cir. 1999) (noting that a claim may be considered abandoned when the allegation is included in the plaintiff's complaint but he fails to present any argument concerning the claim to the district court).

### 2.    FCRA Preemption

The Defendants argue that Bush's negligence, wantonness, and fraud claims, to the extent they are based on alleged inaccurate credit reporting to credit agencies, are preempted by the FRCA.[7]  (Doc. 15 at 4).  There are two potentially

---

[7] The Defendants also argue that Bush's false light and defamation/libel/slander claims are preempted by the FCRA (doc. 15 at 4), but as noted above Bush has abandoned those claims.

applicable FCRA preemption provisions, 15 U.S.C. §§ 1681h(e) and

1681t(b)(1)(F). Section 1681h(e) provides:

> Except as provided in sections 1681n and 1681*o* of this title, no
> consumer may bring any action or proceeding in the nature of
> defamation, invasion of privacy, or negligence with respect to the
> reporting of information against any consumer reporting agency, any
> user of information, or any person who furnishes information to a
> consumer reporting agency, based on information disclosed pursuant
> to section 1681g, 1681h, or 1681m of this title, or based on
> information disclosed by a user of a consumer report to or for a
> consumer against whom the user has taken adverse action, based in
> whole or in part on the report[2] except as to false information furnished
> with malice or willful intent to injure such consumer.

Section 1681t(b)(1)(F) provides:

> No requirement or prohibition may be imposed under the laws of any
> State … with respect to any subject matter regulated under … section
> 1681s-2 of this title, relating to the responsibilities of persons who
> furnish information to consumer reporting agencies ….

When dealing with a furnisher of credit information such as Chase, these two

provisions are difficult to reconcile; "§ 1681t(b)(1)(F) is an absolute bar to state

causes of action, while § 1681h(e) only bars claims [where] the information was

'furnished with malice or willful intent to injure such consumer.'" *Dial v. Midland

Funding, LLC*, 2015 WL 751690, at *6 (N.D. Ala. Feb. 23, 2015).

   As United States District Judge Abdul K. Kallon has observed, "FCRA

preemption of state law torts is an area of little agreement among this district's

judges." *Hamilton v. Midland Funding, LLC*, 2015 WL 5084234, at *6 (N.D. Ala.

Aug. 27, 2015); *see Taylor v. Midland Funding, LLC*, 2015 WL 4670314, at *9-12

(N.D. Ala. Aug. 6, 2015), and *Dial*, 2015 WL 751690 at *6-7, for overviews of the various approaches to FCRA preemption taken by the judges in this district. However, there appears to be a growing consensus, which the undersigned joins, that tort claims based on a furnisher's alleged reporting of inaccurate credit information to credit agencies fall within the scope of section 1681t(b)(1)(F), not section 1681h(e), and are preempted.  As Judge Blackburn has noted, "[t]he three [FCRA] sections covered by § 1681h(e)—1681g, 1681h, and 1681m—regulate disclosures ***to consumers*** and duties of ***users*** of information.  These duties do not concern a ***furnisher's*** duties of reporting and investigation. Section 1681t(b) covers furnishers."  *Schlueter v. BellSouth Tellecomms.*, 770 F. Supp. 2d 1204, 1209 (N.D. Ala. 2010).  Section 1681t(b)(1)(F) preempts "the laws of any state" with respect to any subject matter regulated under § 1681s-2, and § 1681s-2, in turn, imposes duties on furnishers to provide accurate credit information to credit agencies, to investigate credit disputes after notification, and to correct inaccurate information.  *See* § 1681s-2(a) and (b).  Consequently, the court agrees with the growing trend finding that §1681t(b)(1)(F) bars state law tort claims based on inaccurate credit reporting by furnishers. *See  Schlueter*, 770 F. Supp. 2d at 1210-11 (finding that § 1681(b)(1)(F) barred the plaintiffs' state law claims against BellSouth, including their claims for negligent, reckless, and wanton conduct and misrepresentation, where the claims arose out of BellSouth's furnishing of

information to credit reporting agencies); *Hamilton*, 2015 WL 5084234, at *7 (finding that § 1681t(a)(1)(F) barred the plaintiff's invasion of privacy claim based on the defendant's credit reporting."); *Taylor*, 2015 WL 4670314, at *13 (same); *Ferrell v. Midland Funding, LLC*, 2015 WL 2450615, at *6 (N.D. Ala. May 22, 2015) (same); *Dial*, 2015 WL 751690, at *7 (same); *Williams v. Student Loan Guarantee Found. of Arkansas*, 2015 WL 241428, at *13 (N.D. Ala. Jan. 20, 2015) ("§ 1681t(b)(1)(F) preempts Williams's state-law claims to the extent they address the subject matter regulated under § 1681-s2."); *Barnett v. JP Morgan Chase Bank, Nat. Ass'n*, 2013 WL 3242739, at *13 (N.D. Ala. June 26, 2013) (holding that § 1681t(b)(1)(F) preempted the plaintiff from pursuing defamation, libel, or slander claims against Chase arising out of any false reports to credit agencies).

Here, Bush's negligence and wantonness claims are based, in part, on the allegation that Chase failed to ensure that the credit information it disseminated to the national credit bureaus rose to the level of maximum accuracy and was not false, libelous, or slanderous. (Doc. 12 at ¶¶ 26, 30). The claims are also based on allegations that Chase failed to properly train its employees on the thorough investigation of disputed accounts and failed to remove its adverse reporting once Bush disputed it. (*Id.*) Bush's fraud claim is based, in part, on Chase's alleged "dissemination of inaccurate information regarding [his] loan being in default and dissemination of information regarding [his] credit history and credit … that was

known to be false." (*Id.* at ¶ 55).  In other words, Bush's negligence, wantonness, and fraud claims are based, at least in part, on allegations relating to Chase's alleged failure to fulfill its duties under 15 U.S.C. § 1681s-2 (i.e., its duties to provide accurate credit information to credit reporting agencies, to investigate credit disputes after notification, and to correct inaccurate information). Accordingly, to the extent Bush's negligence, wantonness, and fraud claims are based on such allegations, the claims are preempted by the FRCA, 15 U.S.C. § 1681t(b)(1)(F).

### 3.   Negligence and Wantonness

In addition to arguing that Bush's negligence and wantonness claims are preempted by the FCRA, the Defendants assert that the claims are due to be dismissed for failure to state a claim.  "The elements of a negligence claim are a duty, a breach of that duty, causation, and damage." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So.2d 665, 679 (Ala. 2001).   Wantonness is not just a higher level of negligence, but involves "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (emphasis in original).

The Defendants argue that Bush's negligence and wantonness claims fail as a matter of law because they are based on Chase's alleged breach of duties and

obligations created by contract—namely, Bush's note and mortgage. (Doc. 15 at 10). The court agrees. Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by a contract." *Blake v. Bank of America, N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2002); *see also Barber v. Bus. Prods. Ctr., Inc.,* 677 So. 2d 223, 228 (Ala.1996), *overruled on other grounds by White Sands Grp., LLC v. PRS II, LLC,* 32 So. 3d 5 (Ala.2009) ("a mere failure to perform a contractual obligation is not a tort"). Here, in addition to the allegations relating to inaccurate credit reporting, Bush's negligence claim includes allegations that Chase negligently serviced his loan, attempted to collect sums he did not owe, caused his property insurance to be cancelled, defaulted him, and attempted a foreclosure sale on his property. (Doc. 12 at ¶ 26). Bush's wantonness claim includes the same allegations, except he alleges that Chase's conduct was wanton rather than negligent. (*Id.* at ¶ 30). All of these allegations are based on duties arising out of the note and mortgage and amount to allegations that Chase negligently or wantonly breached its contractual servicing obligations. Because Alabama law does not permit Bush to assert a tort claim against Chase for its purported breach of a contract, Bush's negligence and wantonness claims are not legally cognizable and are due to be dismissed. *See, e.g., James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 1198 (S.D. Ala. 2015) (noting that "a veritable avalanche of recent (and apparently unanimous) federal precedent has found that

no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law"); *Duke v. JPMorgan Chase Bank Nat. Ass'n*, 2014 WL 5770583, *4 (N.D. Ala. Nov. 5, 2014) (holding that the plaintiffs' negligence, wantonness, and/or willfulness claims were due to be dismissed because all of the duties the defendant allegedly breached arose out of a mortgage agreement, note, and loan modification agreement); *Rice v. JPMorgan Chase Bank N.A.*, 2014 WL 3889472, *8 (N.D. Ala. Aug. 5, 2014) ("According to the complaint, Chase collected funds that were not owed, caused insurance to be canceled, defaulted Rice, and attempted a foreclosure sale, among other things.  While Rice may pursue these claims under a breach of contract theory, as he has done, his negligence and wantonness claims are due to be dismissed.").

Although not mentioned by the Defendants in their motion to dismiss, Bush's negligence and wantonness claims also include the allegation that Chase failed to properly train and/or supervise its employees with regard to the handling of his loan account.  (Doc. 12 at ¶¶ 26, 30).   Even assuming that Bush might otherwise be able to assert a claim for negligent or wanton training/supervision, he has not done so here.   In the context of a claim for negligent or wanton training/supervision, "the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him." *Thompson v. Havard*, 235 So. 2d 853, 858 (Ala. 1970).   Bush

has not pleaded any facts regarding how Chase employees handled his loan account, what training and supervision they received, or what notice Chase had of their alleged incompetency.  He has offered no facts from which the court could infer that he has a plausible claim against Chase for failure to properly train and/or supervise its employees.

In his opposition to the Defendants' motion to dismiss, Bush attempts to rescue his negligence and wantonness claims by arguing that "federal law and regulations impose a duty of affirmative care on the servicing Defendant, Chase," which duty he claims Chase breached.  (Doc. 23 at 23).  A similar argument was soundly rejected by Judge Steele in *James*:

> Plaintiffs attempt to circumvent these principles [that mortgage servicing obligations are a creature of contract, not of tort] by asserting that statutes, rather than contracts, form the basis for the duties that plaintiffs claim were breached…. This argument is unpersuasive for a host of reasons. First, plaintiffs' Complaint neither provides an inkling that Counts V [negligence] and VI [wantonness] are proceeding under a negligence *per se* theory nor recites any statutes as being the source of the duties that they claim were breached; therefore, it does not comport with *Twombly/Iqbal* pleading requirements.… Second, federal courts in Alabama have given short shrift to similar efforts invoking the doctrine of negligence *per se* to outflank the phalanx of case authorities holding that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.… [T]he Jameses' appeal to negligence *per se* cannot help them because the legal duties underlying their claims against FNMA and Nationstar arise in contract.  The statutes in play in this case regulate the contractual relationship between the Jameses and FNMA/Nationstar, but do not eliminate or supplant that contractual relationship ….

*James,* 92 F. Supp. 3d at 1200, n.9.

Here, similarly, Bush's amended complaint provides no inkling that his negligence and wantonness claims are based, even in part, on Chase's alleged breach of duties imposed by statute.  In his opposition he asserts that Chase "violated the duty owed to him as imposed by RESPA when it fail[ed] to respond to a request for loss mitigation, failed to process his application for loss mitigation and failed to postpone proceeding with a foreclosure until a decision [was] made with regard to loss mitigation," but those allegations are not included anywhere in Counts One (negligence) or Two (wantonness) of his amended complaint.  Indeed, neither RESPA nor any other statute is mentioned in Counts One and Two.  To the extent he now contends that his negligence and wantonness claims are based on Chase's alleged breach of duties created by RESPA (or some other unidentified statute), his amended complaint does not comport with the *Iqbal/Twombly* pleading requirements because it provides no clue that he has been proceeding under such a theory.  Moreover, the fact remains that the legal duties underlying Bush's negligence and wantonness claims against Chase are a creature of contract; they stem from the underlying note and mortgage.  Because Chase's servicing obligations to Bush are rooted in contract, any claim for breach of those obligations must sound in breach of contract, not tort.

For all of the above reasons, Bush's negligence and wantonness claims are due to be dismissed.

### 4.    Fraud

In addition to their FCRA preemption argument, the Defendants argue that Bush's fraud claim is due to be dismissed for two reasons: he has not pleaded his fraud allegations with the particularity required by Rule 9(b), and his "reliance" assertions make no sense.  (Doc. 15 at 17-18).  The court agrees on both fronts.

As noted, Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b).  To satisfy Rule 9(b), a complaint must set forth "(1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba,* 256 F.3d at 1202 (quoting *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)) (quotation marks omitted).

Here, Bush's fraud allegations are far too vague to state a claim for relief consistent with Rule 9(b).  He alleges that Chase "misrepresented" that his loan was in default; disseminated "inaccurate information" about his credit and credit

26

history that was "known to be false"; and "promised" that there would be no attempt to foreclose on his property until his application for a loan modification under the federal HAMP program was approved.  (Doc. 12 at ¶ 55).  However, he does not identify any person at Chase who was responsible for making the alleged misrepresentations and promises, how and when the alleged misrepresentations and promises were communicated, the manner in which the alleged misrepresentations and promises misled him, or what Chase obtained by the alleged fraud.  Simply put, he has not pleaded the circumstances of Chase's alleged fraud with the particularity necessary to satisfy Rule 9(b).

Additionally, a fraud claim in Alabama requires proof of four elements: "(1) [a] false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation." *Ala. Psychiatric Servs., P.C. v. 421 S. Court St., LLC*, 81 So. 3d 1239, 1247 (Ala. 2011) (quotation marks omitted).  With respect to the "reliance" element, Bush's amended complaint alleges in conclusory fashion that Bush "justifiably relied" upon "said representations" by Chase in deciding to proceed with the execution of his loan, and "detrimentally relied" on Chase's promise that it would not attempt to foreclose on his property until his loan modification was approved.  (Doc. 12 at ¶¶ 55, 57).  The first allegation makes no sense; Bush received his loan from ABN AMRO Mortgage Group, not from Chase, and there is no allegation anywhere in

the amended complaint that Chase had any involvement whatsoever in the origination of the loan. Moreover, none of the "said representations" described in Bush's fraud claim have any relation to Bush's decision to proceed with the execution of his loan.

The second allegation—that Bush "detrimentally relied" on a promise by Chase to defer foreclosure until his loan modification application was approved— is inconsistent with everything else he alleges in his amended complaint. As previously noted, Bush consistently asserts throughout his amended complaint that he was not in default on his loan, that he was not behind on his mortgage payments, that he made his payments every month, and that he disputed the Defendants' efforts to foreclose on his home. In addition, no foreclosure sale ever occurred. If Bush remained current on his mortgage payments as he alleges, and there was no foreclosure sale, then his naked assertion that he detrimentally relied on Chase's alleged promise is not plausible on its face. In this regard, the court notes that nowhere in Bush's amended complaint does he identify even one specific detrimental action he took in reliance on Chase's alleged promise to forgo foreclosure until he had received a loan modification. *See Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 5 (Ala. 2004) ("[F]or a plaintiff to state a fraud claim, he must show that a misrepresentation induced him to act in a way that he would not otherwise have acted, that is, that he took a different course of action because of

the misrepresentation."). Without more, Bush's naked allegation of "detrimental reliance" is insufficient to state a viable fraud claim.

### 5.   Wrongful Foreclosure

The Defendants have also moved for dismissal of Bush's wrongful foreclosure claim.  This aspect of the Defendants' motion requires little discussion. "A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan. Ass'n,* 607 So.2d 180, 182 (Ala. 1992). "To state a wrongful foreclosure claim, the plaintiff must plead facts suggesting there [was] an actual foreclosure sale." *Rice*, 2014 WL 3889472, at * 8; *see also ECP Financial II LLC v. Ivey,* 2013 WL 6330936, at *3 (N.D. Ala. Dec. 5, 2013) ("The plain reading of the terms 'uses the power of sale' in the wrongful foreclosure claim establishes that there must be an actual foreclosure sale."); *Vance v. Ocwen Financial Corp.*, 2012 WL 2036412, at *3 (N.D. Ala. June 5, 2012) ("[I]n order to state a claim for wrongful foreclosure, a foreclosure sale must have actually taken place.").

Here, Bush has alleged only that Bank One "wrongfully initiated and attempted to conduct a foreclosure proceeding against [him] in violation of law." (Doc. 12 at ¶ 40).  He does not allege that an actual foreclosure sale ever occurred. Accordingly, his wrongful foreclosure claim is due to be dismissed.

**6.     Slander of Title**

Lastly, the court turns to Bush's slander of title claim.  Under Alabama law, a slander of title claim has six elements: "(1) [o]wnership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of  plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail)." *Merchants Nat. Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981) (quoting *Womack v. McDonald*, 121 So. 57, 59 (Ala. 1929)).  With respect to the special damages requirement, United States District Judge L. Scott Coogler has explained:

> To satisfy the special damages pleading requirement, a plaintiff must allege that the defendant's false publication "interrupted, or injuriously affected, some dealing of the plaintiff with his property" or caused the plaintiff to incur expenses "to relieve his right to the property from the damnifying effect of such false and malicious slander." *Ebersole v. Fields,* 181 Ala. 421, 62 So. 73, 75 (1913).  Special damages must be "distinctly and particularly set out" in the complaint, and "[a]n allegation of loss in general terms is not sufficient." *Id.* (holding that a complaint averring that the defendants falsely slandered the plaintiff's title followed by general allegations of monetary loss was insufficient).

*Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1244 (N. D. Ala. 2013).

Here, Bush has merely alleged that the Defendants "caused a cloud to be placed on the title of [his] property" and that "[a]s the proximate cause of the …

slandering of [his] title, he was caused to suffer injuries and damages and claims all damages allowable under law." (Doc. 12 at ¶¶ 44-45). This general allegation of damages comes nowhere close to satisfying the special damages pleading requirement. Bush has not "distinctly and particularly set out" any special damages, nor has he alleged that the purported slander of his title "interrupted or injuriously affected" his dealing with the property or caused him to incur expenses to rectify the effect of the slander. In other words, he has not alleged any special damages that are traceable to the purported slander of his title to the property. Consequently, his slander of title claim fails as a matter of law and is due to be dismissed.

## C.    Leave to Amend

In his response in opposition to the Defendants' motion to dismiss, Bush requests leave to amend his (amended) complaint to correct any deficiencies in his negligence, wantonness, fraud, TILA, and FCRA claims. (Doc. 23 at 26-27, 30, 43, 45).

The court declines to allow leave to amend in this instance. Bush was placed on notice of the deficiencies in his case via the Defendants' first motion to dismiss. (Doc. 7). He has had one opportunity to correct the deficiencies and has failed to do so. *Coventry First, LLC v. McCarty,* 605 F.3d 865, 869 (11th Cir. 2010) ("A plaintiff has a right to amend a complaint once as a matter of course so

long as no responsive pleading has been filed.").   In view of the opportunity already afforded Bush to amend his complaint, his present allegations, and the foregoing legal determinations by the court, there is no reason to believe that Bush will be able to correct the deficiencies if he is given a second chance to amend his original claims.

## V.  CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is due to be granted in part and denied in part as follows: Bush's state law, TILA, FCRA, and FDCPA claims are due to be dismissed and his RESPA claim will be allowed to proceed along with his breach of contract claim.   To the extent Bush requests permission to file a second amended complaint, the request is due to be denied. An order consistent with the court's findings will be entered.

**DONE**, this the 27th day of January, 2016.

_____

**JOHN E. OTT**
Chief United States Magistrate Judge